Alan Harris (SBN 146079)
David Garrett (SBN 160274)
Priya Mohan (SBN 228984)
Min Ji Gal (SBN 311963)
HARRIS & RUBLE
655 North Central Avenue 17th Floor
Glendale California 91203
Tel: 323.962.3777
Fax: 323.962.3004
harrisa@harrisandruble.com
dgarrett@harrisandruble.com
pmohan@harrisandruble.com
mgal@harrisandruble.com

*Attorneys for Plaintiff*
*Jesse Olaguez*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE OLAGUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROSCO PRODUCTION LA LLC, a California Limited Liability Company; DANIEL A. WORTHINGTON, an individual; and DOE 1 through and including DOE 10,<br><br>Defendants. | Case No:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>1. Cal. Lab. Code (the "Code") §§201.3, 201.5, 203, 204 and/or 204b Continuing Wages<br><br>2. Code § 226(a), Failure to Provide Complete Wage Statements, and Wage Order 4 or 12<br><br>3. Code § 226.7, 512 and Wage Order 4 or 12, Failure to Provide Proper Compensation for Improper Rest Breaks and Meal Periods<br><br>4. Code §§ 1194, 1194.2 and 1198 and Wage Order 12, Failure to Pay Proper Minimum Wages<br><br>5. Code §§ 2802 and Wage Order 12, Failure to Reimburse Business Expenses<br><br>6. Bus & Prof. Code §§ 17200 *et seq.* – Restitution<br><br>7. Breach of Implied Employment Contract<br><br>8. Fair Labor Standards Act<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jesse Olaguez ("Olaguez"), by and through their undersigned attorneys, on information and belief, alleges as follows:

## JURISDICTION AND VENUE

1. This is a civil action seeking unpaid wages,[1] damages, statutory penalties, and attorneys' fees as well as reimbursement of costs and such other relief as may be appropriate in the circumstances.

2. Venue is proper in this District because a substantial part of the events or omissions give rise to the claims occurred in this District. Defendants maintain an office, transact business, have an agent, and/or are found in the County of Los Angeles and are within the jurisdiction of this Court for purposes of service of process.

3. This case includes a claim under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. Both delinquent payment and non-payment of minimum wages violate the FLSA, requiring the timely payment of a minimum hourly wage. See, Biggs v. Wilson, 1 F.3d 1537 (9th Cir. 1993).

4. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this case individually and as a class action. Pursuant to 29 U.S.C. § 216(b), Plaintiff also brings this case individually and as a collective action on behalf of similarly situated individuals who have been employed by Defendants.

## THE PARTIES

5. Plaintiff OLAGUEZ is an individual, who, during the time periods relevant to this Complaint, was and is a resident of the State of California, routinely working within the County of Los Angeles.

6. Defendant ROSCO PRODUCTION LA LLC ("RPLA") is a California Corporation, and "a full service production company based in London, Paris, LA, and

[1] Under Wage Order 12, "'Wages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Under Naranjo v. Spectrum Security Services, Inc., 15 Cal. 5th 1056, 1068 (2024), monies owing on account of an employer's failure to pay an additional hour of wages when it fails to provide proper rest breaks are deemed wage payments, not penalties.

New York," which at all times relevant herein, conducted business within the County of Los Angeles, State of California and produced at least one motion picture project, hiring temporary workers such as Plaintiff as cast and crew.

7. Defendant DANIEL A. WORTHINGTON ("Worthington") is a resident of California who at all times relevant herein, conducted business within the County of Los Angeles, State of California. Worthington is a "Manager or Member" of RPLA and produced at least one motion picture project, hiring temporary workers such as Plaintiff as cast and crew.

8. Each of the Defendants is a person which during the relevant time period maintained a place of business in the County of Los Angeles of the State of California. By Defendants' adoption of a weekly payroll regime and advising nonunion workers of their adoption of a weekly payroll regime, as required by Section 2810.5 of the California Labor Code (the "Code"), the Wage Theft Protection Act, Defendants m to pay workers no less frequently than weekly. Further, Defendants informed TakeOne Network Corp., doing business as Wrapbook—their payroll agent responsible for processing wages for cast and crew—that federal income taxes should be withheld from paychecks in light of Defendants' decision to compensate cast and crew on a weekly basis.

9. Defendants' payroll system was designed and operated in a manner that made consistently timely payment of wages impossible or highly unlikely. Each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, conducted a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants.

10. Defendants were at all relevant times acting as actual agents, conspirators, ostensible agents, alter egos, partners and/or joint venturers and/or employees of all other Defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent authorization and ratification

of their co-defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contradiction with other allegations.

11. Defendants' business model satisfies both the 'temporary services employer' framework under §201.3 and the motion picture payroll provisions under §201.5, each independently requiring prompt wage payment."

12. Defendants may be deemed "temporary services employers"[2] as defined by Code § 201.3 and required to pay workers no less frequently than weekly. Section 201.3 provides, in part:

> **(a)** For purposes of this section, the following definitions apply:
>
> **(1)** "Temporary services employer" means an employing unit that contracts with clients or customers to supply workers to perform services for the clients or customers and that performs all of the following functions:
>
> **(A)** Negotiates with clients and customers for matters such as the time and place where the services are to be provided, the type of work, the working conditions, and the quality and price of the services.
>
> **(B)** Determines assignments or reassignments of workers, even if workers retain the right to refuse specific assignments.
>
> **(C)** Retains the authority to assign or reassign a worker to another client or customer when the worker is determined unacceptable by a specific client or customer.
>
> **(D)** Assigns or reassigns workers to perform services for clients or customers.
>
> **(E)** Sets the rate of pay of workers, whether or not through negotiation.
>
> **(F)** Pays workers from its own account or accounts.
>
> **(G)** Retains the right to hire and terminate workers.

---

[2] Under both Wage Orders 4 and 12, an "'Employer' means any person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person."

. . .

**(4)** "Client" and "customer" mean the person with whom a temporary services employer has a contractual relationship to provide the services of one or more individuals employed by the temporary services employer.

**(b)(1)(A)** Except as provided in paragraphs (2) to (5), inclusive, if an employee of a temporary services employer is assigned to work for a client, that employee's wages are due and payable no less frequently than weekly, regardless of when the assignment ends, and wages for work performed during any calendar week shall be due and payable not later than the regular payday of the following calendar week. A temporary services employer shall be deemed to have timely paid wages upon completion of an assignment if wages are paid in compliance with this subdivision.

. . .

**(c)** A temporary services employer who violates this section is subject to the civil penalties provided for in Section 203 and to any other penalties available at law.

**(d)** This section shall not be interpreted to limit any rights or remedies otherwise available under state or federal law.

Code § 201.3.

12. As a "temporary services employer," Defendant RPLA has acted as an employing unit which contracts with client financier[s] to supply workers to perform services for various motion pictures, including, with respect to OLAGUEZ, a "Project" designated as "NIKE RUNNING FA 25 – LINE UP / CHOICE"). RPLA performs all of the following functions: (A) Negotiates with clients and customers for matters such as the time and place where the services are to be provided, the type of work, the working conditions, and the quality and price of the services (see, e.g. Exhibits 1-3); (B) Determines assignments or reassignments of workers, even if workers retain the right to refuse specific assignments; (C) Retains the authority to assign or reassign a worker to

another client or customer when the worker is determined unacceptable by a specific client or customer; (D) Assigns or reassigns workers to perform services for clients or customers; (E) Sets the rate of pay of workers, whether or not through negotiation; (F) Pays workers from its own account or accounts; and (G) Retains the right to hire and terminate workers.

## GENERAL ALLEGATIONS

13. Defendants employed Plaintiff during the week ending March 29, 2025. The wages were due on or before Thursday, April 3, 2025. No paycheck was even prepared until on or after April 11, 2025. Plaintiff worked for at least 10.00 hours, but was not paid any premium rest break wage for the day. No premium rest break wages were paid at all to any worker, despite the fact that on no day of more than four hours work, neither Plaintiff nor any other member of the production crew was provided any rest breaks, at all. Plaintiff was entitled to at least two uninterrupted rest breaks of at least ten minutes, each day. These were not provided. Plaintiff should have been paid a premium Rest Break wage for their day of work. According to the Wage Statement, the "Pay period" for the services was seven days, beginning on Sunday, March 23, 2025, and ending on Saturday, March 29, 2025. Defendants were required to pay Plaintiff in full by the next week, on or before Thursday. Plaintiff was not paid according to law. Indeed, by check dated April 11, 2025, Plaintiff was paid "Straight Time" wages in the amount of $600.00, and "OT x1.5" wages in the amount of $225.00. **Exhibit 1** is a copy of the Wage Statement dated April 11, 2025, issued to OLAGUEZ for their work on the Production for the "Pay period: "Mar 23 – 29, 2025".

14. The illegal policies of Defendants routinely result in tardy payment of wages owing the crew members. These policies of Defendants include failing to devote sufficient capital to the payroll accounting function.

15. By "outsourcing" Defendants' payroll functions to a New York entity, the Defendants have created a system which requires duplicative reviews of the payroll by two or more separate entities, as well as by a supervising temporary employee, a practice

which leads to unnecessary, inevitable delay and tardy payment of wages.

16. When Defendants employ temporary employees, hired for just a day or so, they nevertheless undertake responsibility for prompt and correct payment of wages owing to them. However, Defendants have created a convoluted payroll process in such a way as to routinely if not inevitably fail to timely issue the paychecks. Under Defendants' complex payment structure, employees could not be paid until at least three steps were completed:

a. Temporary employees—who were designated as "managers" but operated with less direct control than regular staff—completed and reviewed onboarding paperwork and timecards;
b. Defendants conducted an internal review to verify the information received from the field production site; and
c. Defendants paid the offsite payroll company, including its fees and the total amount of wages and taxes owed.

17. As the payroll company did not extend credit to production companies such as RPLA, the already cumbersome process was routinely delayed.

18. The process of preparing the timecards was subject to delay as, for example, neither Defendants nor their contracting parties or other authorized temporary employees instructed class members how to fill out the required forms.

19. The onboarding process required each Class Member to review and prepare a Form W-4 and a Form I-9. The latter required a *third-party* representative of Defendants, generally a temporary worker such as another day player, to review each Class Member's Identity and Employment Authorization paperwork. Thereafter, the Employee had to execute the document and the employer's representative was required to "Certify under penalty of perjury, that (1) I have examined the document(s) presented by the above-named employee, (2) the above-listed document(s) appear to be genuine and to related to the employee named, and (3) to the best of my knowledge the employee is authorized to work in the United States." With respect to the Form W-4, the Employee's

Withholding Certificate, this is another government form to be prepared and signed by both the Employee and the Employer or its designated temporary employee representative.

20. The next step in the process is for the timecards to be distributed to and completed by each Class Member before being approved by Defendants. In this case, and routinely in the motion picture industry in California, the blank timecards were provided by the Payroll Company, either electronically with the employee using an app on their personal cell phone, or in hard copy, later transcribed by a third person into an electronic database of information.

21. The timecard provides room for the Employee to give information for the industry standard seven-day workweek. After the timecard is completed by the employee, it is reviewed and approved by a representative of the employer. Significantly, the timecard has a place for the employee to record the beginning and end times for the first and second meals, but nowhere to indicate when or if the required rest breaks were provided. It appears that RPLA has never paid a premium wage on account of its failure to provide compliant rest breaks. "Down time" on a production set is no substitute for duty-free rest breaks, as "down time" is routinely interrupted by Walkie-Talkie calls; cell phone calls, emails and texts; and otherwise. Similarly, workers such as Plaintiff and the Class have their meal periods routinely interrupted by Walkie-Talkie calls; cell phone calls, emails and texts; and otherwise.

22. After the timecards are completed by temporary employees and reviewed by other, authorized temporary employees, the data are provided to the payroll company and reviewed by a payroll clerk for completeness and accuracy. Then the payroll clerk prepares a "draft invoice" which is sent back to the production company for its review and approval by another staff or temporary employee. After that step, the draft invoice is marked as approved and returned to the payroll company so it can issue the actual invoice and await payment.

23. The next step is for the production company to pay the payroll company for

the amount of the approved invoice, adding to that payment reimbursement to the payroll company for its charges.

24. Historically and in this case, the final payments to the payroll company are often tardy with the result that paychecks are delayed, and the employee is not paid in timely fashion.

25. The last step in the process – transferring the payments owing to the payroll company—must be completed before the payroll company prepares and releases the paychecks to the production company for its distribution to workers. On occasion, the payroll company may mail paychecks or issue ACH deposits. Under Code §201.5(c), "[t]he payment of wages to employees covered by this section may be mailed to the employee . . . The payment shall be deemed to have been made on the date that the employee's wages are mailed to the employee." Under Code §212 (a) (1), the ACH payment may not be "negotiable and payable in cash, on demand" on the day it is issued to a bank from a payroll company and, accordingly, such payments cannot substitute for compliance with Code 201.5(c), all of which results in further delay before the employee has use of funds on the day when their bank makes the funds available in the worker's account.

26. Although Plaintiff OLAGUEZ should have been paid in full for their accrued wages, provided proper, uninterrupted rest breaks and meal periods, and issued final wages no later than as required by Code §§201.3, 201.5, 201.6, 203, 204 and/or 204(b), wages remain unpaid in the full amount owing. The final payment did not fully compensate Plaintiff for all outstanding wages.

27. Plaintiff and Class Members have as of the date of filing of this Complaint not been fully compensated for work performed for the Defendants. On information and belief, Defendants did not pay their employees a premium wage on account of a missed, tardy, combined or truncated meal period and/or rest break, an unlawful business practice. See, Safeway v. Sup. Ct., 238 Cal. App. 4th 1138 (2015). Plaintiff and crew members have not been paid accrued premium wages owing for the non-provision of compliant

rest breaks and meal periods, as required by Naranjo v. Spectrum Security Services, Inc., 15 Cal. 5th 1056, 1068 (2024) ("section 203 and section 226 claims can be brought based on unpaid and unreported missed-break premium pay.") The foregoing prevents employees from determining from the face of the wage statement whether they were properly compensated.

28. Plaintiff and Class Members were required to always keep their walkie talkie radios and/or cell phones with them, including during rest breaks and meal periods. Plaintiffs and Class Members were aware of and followed the industry practice under which they were expected to and did monitor the devices and respond when called or in receipt of a text or email. Some breaks were simply not provided at all. Under Augustus v. ABM Sec. Servs. Inc., 2 Cal. 5th 257, 260 (2016), this policy denied Plaintiff and many others the ability to take legally compliant rest breaks and meal periods as required by California law.

29. At all relevant times mentioned herein, to the extent Plaintiff and the class are not deemed temporary services workers, Wage 12 of the California Industrial Welfare Commission applied to Plaintiff and Class Members. In part, the Wage Order reflects employer obligations regarding hours and days of work, reporting time pay, records, meal periods and rest periods (obligations which the employer, here, failed to fulfill). Wage Order 12 provides, in relevant part:

> **3. Hours and Days of Work.**
>
> (A) Daily Overtime - General Provisions
>
> (1) The following overtime provisions are applicable to employees 18 years of age or over and to employees 16 or 17 years of age who are not required by law to attend school and are not otherwise prohibited by law from engaging in the subject work. Such employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1.5) times such employee's

regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime as follows:

(a) Employees may be employed up to a maximum of sixteen (16) hours including meal periods in any one day from the time they are required and do report until dismissed, provided the employee is compensated for such overtime at not less than:

(1) For daily employees and weekly employees, excluding weekly employees guaranteed more than forty (40) hours a workweek and "on call" employees, one and one-half (1.5) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including twelve (12) hours in any one workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and

(2) Double the employee's regular rate of pay for all hours worked in excess of twelve (12) hours in any workday, and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

(3) Overtime payments shall not be compounded and all payments made by the employer for daily overtime on the basis herein above specified shall be applied toward any sum for weekly overtime.

(4) The overtime rate of compensation required to be paid to a nonexempt full-time salaried employee shall be computed by using the employee's regular hourly salary as one fortieth (1/40) of the employee's weekly salary. The overtime rate of compensation required to be paid to a nonexempt full-time salaried employee shall be computed by using the employee's regular hourly salary as one-fortieth (1/40) of the employee's weekly salary.

. . .

**7. <u>Records.</u>**

(A) Every employer shall keep accurate information with respect to each employee including the following:

(1) Full name, home address, occupation and social security number.

(2) Birth date, if under 18 years, and designation as a minor.

(3) Time records showing when the employee begins and ends each work period. Meal periods, split shift intervals and total daily hours worked shall also be recorded. Meal periods during which operations cease and authorized rest periods need not be recorded.

(4) Total wages paid each payroll period, including value of board, lodging, or other compensation actually furnished to the employee.

(5) Total hours worked in the payroll period and applicable rates of pay. This information shall be made readily available to the employee upon reasonable request.

(6) When a piece rate or incentive plan is in operation, piece rates or an explanation of the incentive plan formula shall be provided to employees. An accurate production record shall be maintained by the employer.

(B) Every employer shall semimonthly or at the time of each payment of wages furnish each employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately, an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer, provided all deductions made on written orders of the employee may be aggregated and shown as one item.

(C) All required records shall be in the English language and in ink or other indelible form, properly dated, showing month, day and year, and shall be

kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. An employee's records shall be available for inspection by the employee upon reasonable request.

. . .

**12. <u>Rest Periods.</u>**

(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3.5) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

Cal. Code of Regs., tit. 8, § 11120 ("Wage Order 12").

30. At all times relevant herein, section 201.5 of the Code provided in part:

(a) For purposes of this section, the following definitions apply:

(1) "An employee engaged in the production or broadcasting of motion pictures" means an employee to whom both of the following apply:

(A) The employee's job duties relate to or support the production or broadcasting of motion pictures or the facilities or equipment used in the production or broadcasting of motion pictures.

(B) The employee is hired for a period of limited duration to render services relating to or supporting a particular motion picture production or

broadcasting project, or is hired on the basis of one or more daily or weekly calls.

(2) “Daily or weekly call” means an employment that, by its terms, will expire at the conclusion of one day or one week, unless renewed.

(3) “Next regular payday” means the day designated by the employer, pursuant to Section 204, for payment of wages earned during the payroll period in which the termination occurs.

(4) “Production or broadcasting of motion pictures” means the development, creation, presentation, or broadcasting of theatrical or televised motion pictures, television programs, commercial advertisements, music videos, or any other moving images, including, but not limited to, productions made for entertainment, commercial, religious, or educational purposes, whether these productions are presented by means of film, tape, live broadcast, cable, satellite transmission, Web cast, or any other technology that is now in use or may be adopted in the future.

(b) An employee engaged in the production or broadcasting of motion pictures whose employment terminates is entitled to receive payment of the wages earned and unpaid at the time of the termination by the next regular payday.

(c) The payment of wages to employees covered by this section may be mailed to the employee or made available to the employee at a location specified by the employer in the county where the employee was hired or performed labor. The payment shall be deemed to have been made on the date that the employee’s wages are mailed to the employee or made available to the employee at the location specified by the employer, whichever is earlier.

> (d) For purposes of this section, an employment terminates when the employment relationship ends, whether by discharge, layoff, resignation, completion of employment for a specified term, or otherwise.
>
> (e) Nothing in this section prohibits the parties to a valid collective bargaining agreement from establishing alternative provisions for final payment of wages to employees covered by this section if those provisions do not exceed the time limitation established in Section 204.

Code § 201.5.

31. Defendants employed individuals such as Plaintiff and Class Members to work on motion picture productions, yet Defendants failed to timely or fully pay them, all in violation, inter alia, of Code sections 201, 201.3, 201.5, 204 and/or 204b.

32. At all relevant times mentioned herein, section 203 of the Code provided:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202 and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until action therefore is commence; but the wages shall not continue for more than 30 days.

Code § 203. By failing to pay Plaintiff and Class Members all wages when due at termination, Plaintiff and Class Members are entitled to continuing wages pursuant to section 203 of the California Labor Code.

33. At all times relevant herein, section 204 of the Code provided in part:

> All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor

performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month.

Code § 204.

34. At all times relevant herein, section 204b of the Code provided in part:

Section 204 shall be inapplicable to employees paid on a weekly basis on a regular day designated by the employer in advance of the rendition of services as the regular payday.

Labor performed by a weekly-paid employee during any calendar week and prior to or on the regular payday shall be paid for not later than the regular payday of the employer for such weekly-paid employee falling during the following calendar week.

Labor performed by a weekly-paid employee during any calendar week and subsequent to the regular payday shall be paid for not later than seven days after the regular payday of the employer for such weekly-paid employee falling during the following calendar week.

Code § 204b. The Defendants' policy has been to devote insufficient resources to the payroll accounting function and/or to insufficiently fund its productions, with the inevitable result that employees are routinely paid in tardy fashion, in violation of sections 201.3, 203, 204 and/or 204b of the Code, and otherwise in violation of the Code.

35. In no event should Plaintiff or Class Members have been paid later than the time periods established by sections 201.3, 201.5, 201.6, 203, 204 and/or 204b of the Code, but certain payments to Plaintiff were made after they were due, all leading to penalties and civil penalties under sections 203 and 204 and/or 204b of the Code as well as 210.

36. At all times relevant herein, section 210 of the Code provided:

In addition to, and entirely independent and apart from, any other penalty

> provided in this article, every person who fails to pay the wages of each employee as provided in Sections 204, 204b, 204.1, 204.2, 205, 205.5, and 1197.5, shall be subject to a civil penalty as follows: (a) For any initial violation, one hundred dollars ($100) for each failure to pay each employee; (b) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

Code § 210. With respect to their obligations to the crew, Defendants violated section 210. Defendants' policy has been to devote insufficient resources to the payroll accounting function, with the inevitable result that employees are routinely paid in tardy fashion, in violation of sections 201.3, 201.5, 201.6, 203, 204 and/or 204b of the Code, and otherwise in violation of the Code.

37. At all relevant times, Plaintiff and Class Members remained subject to Defendants' control during purported rest periods and meal breaks. Code sections 226.7, 512 and Section 12 of the Wage Order require an employer to pay an additional hour of compensation for each rest break or meal period the employer fails to provide. Section 11 of Wage Order 12 requires that "No employer shall employ any person for a work period of more than six (6) hours without a meal period of not less than thirty (30) minutes, nor more than one (1) hour. Subsequent meal period for all employees shall be called not later than six (6) hours after the termination of the preceding meal period."

38. Defendants failed to maintain a policy informing all Class Members of these rights and failed to fulfill their obligations under section 7 of the Wage Order, requiring employers to maintain "accurate information with respect to each employee including the following: . . . [t]ime records showing when the employee begins and ends each work period. Meal periods . . . and total daily hours worked shall also be recorded."

39. Here, Defendants failed to apprise Class Members of their rights associated with meal periods and failed to provide timely meal periods. Defendants have had a consistent policy of: (1) requiring Class Members to take late meal breaks that occurred

after the first 6 hours of each shift; (2) requiring Class Members to work shifts over 12 hours without providing a second meal period of 30 minutes in length; and (3) failing to pay such employees 1 hour of pay at the employees regular rate of compensation for each workday in which a proper meal break was not provided.

40. At all relevant times mentioned herein, section 226.7 of the Code provided:

> (a) As used in this section, "recovery period" means a cooldown period afforded an employee to prevent heat illness.
>
> (b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.
>
> (c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

Code § 226.7.

41. At all relevant times mentioned herein, section 226 of the Code provided:

> (a) Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on

a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided, that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

. . . .

(e) An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

. . . .

> (g) An employee may also bring an action for injunctive relief to ensure compliance with this section, and is entitled to an award of costs and reasonable attorney's fees.

Code § 226.

42. Defendants employed Plaintiff and Class Members, but, in all cases, Defendants failed to provide them with the data required by section 226(a) of the Code. Defendants did not provide a Wage Statement which stated all accrued premium wages owing for missed meal periods and rest breaks. The Wage Statement failed to report accrued premium wages owing for non-provision of compliant rest periods and meal breaks, instead, for example, referring to faux "Meal Pens." Specifically, the Wage Statements did not reflect the correct premium wages owed for missed, late, or shortened rest breaks, as required by law. All the foregoing was intentional misconduct of Defendants that injured Plaintiff and Class Members insofar as they were subjected to confusion and deprived of information to which they were legally entitled.

43. Defendants illegally rounded the start and end times for their employees, as well and the start and end times for meal periods. Defendants are subject to the civil penalties by failing to pay the Class Members their full wages, for when the beginning of a work period is rounded up, or the end of a work period is rounded down, the worker is generally deprived of wages.

44. Defendants used an improper rounding scheme when tracking employee hours worked, with the inevitable result of shortchanging workers' pay. A number of Class Members were not timely paid proper minimum and/or overtime wages to which they were entitled in violation of Code §§ 510¸ 1194, and 1194.2. Both overdue payment and nonpayment of minimum and/or overtime wages for all hours worked violate the minimum and/or overtime wage statute. Defendants are subject to the penalties for failing to pay the affected Class Members their minimum and/or overtime wages. When working on set at a novel location, crew are provided a "start time" yet they are unfamiliar with the location and also directed to use specific areas in which to park, areas

which are often remote from the base camp to which they are required to report at or before the start time. Since they are under the employers' control for the time required to go from the required parking area to the base camp, the time to walk (or to be transported in employer-provided vans) from their car to the base camp is uncompensated and becomes unpaid time, entitled to be compensated, generally at an overtime or double time wage rate, if not the minimum wage. Similarly, artificial "wrap times" are set for the end of the day, and crew are expected to work until that time, again working off the clock during the period between wrap and the time when they are able to return to the preassigned parking area, again, often extended by time waiting for company vans to transport them to remote parking facilities.

45. Section 512(a) of the Code provides, in part: "(a) An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Section 512(b)(1) of the Code provides, in part: "the Industrial Welfare Commission may adopt a working condition order permitting a meal period to commence after six hours of work." Code § 512(a) and (b)(1).

46. At all relevant times mentioned herein, section 1194 of the Code provided:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Code § 1194. Code section 1194.2 provides for liquidated damages when proper minimum wages have not been paid as, for example, when time are illegally rounded and when precise thirty or sixty minute times for meals are deducted from wages even though workers are routinely interrupted during meal periods and required to take their meals in designated areas.

47. IWC Wage Order 16 provides, in relevant part:

> (A) Every employer shall pay to each employee wages of not less than seven dollars and fifty cents ($7.50) per hour for all hours worked, effective January 1, 2007, and not less than eight dollars ($8.00) per hour for all hours worked, effective January 1, 2008.
>
> (B) Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commissioner, or otherwise.

8 Cal. Code Regs. § 11160(4).

48. At all relevant times mentioned herein, section 2802 of the Code provided in part:

> (a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . .
>
> (b) All awards made by a court . . . for reimbursement of necessary expenditures under this section shall carry interest at the same rate as judgments in civil actions. Interest shall accrue from the date on which the employee incurred the necessary expenditure or loss.
>
> (c) For purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing rights granted by this section.

Code § 2802. Defendants failed to reimburse Plaintiff and Class Members for necessary business expenses incurred in the performance of their duties, such as for the use of a personal cell phone and for other motion picture equipment and supplies.

49. As part of the implied employment contracts between each Plaintiff and Class member, on the one hand, and Defendants, on the other, the Parties agreed that the

employees would promptly respond to any cellphone or walkie talkie calls they received, and Plaintiff and Class Member routinely did so, whether or not on a faux "rest break" or "meal period," whether or not "on the clock" or before call time or after wrap.

50. Most major producers reimburse workers for their expenses in acquiring and maintaining personal cellphones. The Plaintiff and Class Members were required to be available via radio or cell phone at all times.

51. It is "an employer's duty . . . to maintain accurate records of its employees' hours" and that duty "is non-delegable." Kuebel v. Black & Decker Inc., 643 F.3d 352, 363 (2d Cir. 2011). Although Kuebel establishes that it is solely the employer's duty to keep track of hours worked under the federal FLSA, and although Plaintiffs' wage-and-hour claims are largely brought under the state law, the fact remains that Defendants, always, were subject to the FLSA and therefore were themselves required to keep track of Plaintiffs' hours worked. See Troester v. Starbucks Corp., 5 Cal. 5th 829, 839 (2018) (explaining that, although California's wage-and-hour laws are "more protective than federal law" and that "California is free to offer [employees] greater protection," the FLSA "provide[s] a level of employee protection that a state may not derogate"). Troester, 5 Cal. 5th at 846 ("Nor is it clear why, when it is difficult to keep track of time worked, the employee alone should bear the burden of that difficulty"), 848 ("An employer may be able to customize and adapt available time tracking tools or develop new ones when no off-the-shelf product meets its needs. And even when neither a restructuring of work nor a technological fix is practical, it may be possible to reasonably estimate work time . . . and to compensate employees for that time."). Marlo v. United Parcel Serv., Inc., No. CV 03-04336 DDP (RZx), 2009 WL 1258491, at *3 (C.D. Cal. May 5, 2009), explains that, under California law, "employers must keep track of the hours . . . employees work." Before an employee starts to work for an employer, the employer is required to have the employee fill out the requisite new-hire paperwork. See e.g. Ketchikan Drywall Servs., Inc. v. Immigration & Customs Enforcement, 725 F.3d 1103, 1113 (9th Cir. 2013) (stating that 8 U.S.C. § 1324a "clearly makes employers

responsible for documenting employee work authorization" and that, "[w]here [a defendant] cho[oses] to hire employees who ha[ve] failed to fill out [s]ection 1 [of I-9 Forms] completely, it d[oes] so at its own peril"); 26 C.F.R. § 31-3402(f)(2)-1 subsec. (a) (stating that a withholding-exemption certificate must be completed "[o]n or before the date on which an individual commences employment"); 22 Cal. Code Regs. § 4340-1(a) stating that a withholding-exemption certificate must be completed "[o]n or before the date on which an individual commences employment"). If, for example, the employee fails to complete the necessary tax documents, the employer must follow the guidance from the Internal Revenue Service and the California Employment Development Department by withholding taxes as if the employee is single with no withholding allowances. See Internal Revenue Serv., *Topic Number 753 – Form W-4 – Employee's Withholding Allowance Certificate* (last updated Mar. 1, 2018), https://www.irs.gov/ taxtopics/tc753. There is an analogous cite from the California EDD (re defaulting to the single-no-allowances rule): Cal. Emp't Dev. Dep't, *Employer's Obligations for Form W-4 or DE 4* (2016), https://www.edd.ca.gov/ pdf_pub_ctr/de71.pdf).

52. As part of the employment contracts between Class Members, on the one hand, and Defendants, on the other, the Parties agreed that their contract had an implied covenant of good faith and fair dealing.

53. As part of the implied employment contracts with each Plaintiff and Class member, on the one hand, and Defendants on the other, when filming within the jurisdictions subject to FilmLA, in which, on information and belief, perhaps half of the Productions here are issue were filmed, the Parties agreed that the employees would abide by the conditions in the FilmLA Film Permits issued to Defendants, permitting the scheduled work. Those Film Permits routinely required compliance with a "FilmLA Filmmakers' Code of Professional Responsibility" (the "LA Code"). The version issued in 2019 provides, in part, for regulation of employer conduct before reporting to work and going on the clock, before the start of the day is regulated, but not compensated:

1. The production company must comply with the provisions of the film

permit at all times.

2. The Filmmakers' Code of Professional Responsibility will be attached to every permit, and both must be shown to any member of the public that asks to see them.

3. Productions arriving on-location in or near a residential neighborhood shall enter the area no earlier than the time stipulated on the permit.

. . .

5. Cast and crew must observe designated parking areas. Parking of cast and crew vehicles on public streets is prohibited unless authorized by the film permit.

6. Parking on both sides of public streets is prohibited unless specifically authorized by the film permit.

7. Production vehicles may not block driveways without the express permission of the local municipality or the driveway owner.

(https://filmla.com/wp-content/uploads/2019/07/Filmmakers-code-of-coduct-2019.pdf., last accessed August 2, 2024).

54. Another, later version issued by FilmLA is to the same effect. It states:

Meals must be confined to the area designated in the location agreement or permit. Individuals must eat within the designated meal area.

55. In addition, there is a "California Film Commission Filmmakers Code of Conduct" (the "CA Code"). That CA Code provides, in part, that worker activity before the start of the day is regulated, but in this case the workers were not paid for this off the clock time, most of which should have been compensated at least as a minimum wage:

2. Production vehicles arriving on location in or near a residential neighborhood should not enter the area before the time stipulated in the permit, should park one by one, and turn off engines as soon as possible. Cast and crew should observe designated parking areas.

(https://cdn.film.ca.gov/wp-content/uploads/2020/11/Professional-Filmmakers-Code-of-

Conduct.pdf).

56. All employees, whether or not in a union, would honor calls for "grace" to permit filming to continue beyond the sixth or twelfth hour of work as the case may be. Grace is routinely called in the motion picture industry, and non-union workers have their meals often delayed beyond the sixth or twelfth hour of work, without compensation by the Defendants for such untimely meals. Defendants' regular record-keeping procedures note when grace is called, and during discovery these materials will be accessed so that Plaintiff might amend this Complaint to articulate precise details relating to these practices.

57. As part of the implied employment contracts between Class Members, on the one hand, and Defendants on the other, the Parties agreed that all such employees would remain on or near the designated set, from their initial report time until final wrap for the day. For example, according to the Commercial Filmmakers' Code of Professional Responsibility: "5. Cast and crew meals shall be confined to the area designated in the location agreement or permit." (https:// aicp.com/ assets/editor/AICP_ Location_ Code_ of_Professional_Responsibility_members_June2017.pdf (last accessed August 2, 2024). This policy and practice is articulated in the LA Code:

> Cast and crew are to remain on or near the area that has been permitted. . . .
>
> . . .
>
> If not specified in the permit, an area for meal service and consumption must be designated.

See ¶9.

58. The foregoing Codes reflect industry practices in the filming of Motion Pictures in California, feature films, television programs and otherwise. Plaintiff and class members were aware of and followed the Code rules (adopted by the employers) requiring that they remain on set, even during faux rest breaks and meal periods.

59. At all relevant times mentioned herein, section 558 of the Code provided:

> Any employer or other person acting on behalf of an employer who violates,

> or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (3) Wages recovered pursuant to this section shall be paid to the affected employee.

Code § 558.

60. At all relevant times mentioned herein, section 558.1 of the Code provided:

> (a) Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.
>
> (b) For purposes of this section, the term "other person acting on behalf of an employer" is limited to a natural person who is an owner, director, officer, or managing agent of the employer, and the term "managing agent" has the same meaning as in subdivision (b) of Section 3294 of the Civil Code.
>
> (c) Nothing in this section shall be construed to limit the definition of employer under existing law.

Code § 558.1.

61. Temporary workers are employed as managers of RPLA and oversee RPLA's operations. Plaintiff alleges that Defendants implemented and/or enforced the policies and practices that led to the violations of Code §§ 203, 226, 226.7, 1194, and

2802. Defendants and/or temporary managers retained by them and under their direction were physically present on set during the productions, actively participating in or maintaining authority over the productions' operations.

62. Defendants retained temporary employees as managing agents of RPLA, individuals who caused the violations alleged herein within the relevant sections of the Code. Defendants directly and/or indirectly controlled the Class Members' wages, working conditions, and hours and were responsible for the policies or lack of policies that resulted in the Code violations outlined herein, including violations of Code §§ 203, 226, 226.7, 1194, and 2802.

63. Upon information and belief, Defendants were joint employers and/or persons acting on behalf of the employer within the meaning of Code § 558.1. Defendants exercised control over the payroll practices, compensation policies, and employment-related financial decisions outlined herein. Defendants and/or others acting under their direction, generally temporary employees, supervised Class Members' day-to-day work, including scheduling, oversight, and enforcement of working conditions during production. Each Defendant was involved in creating, approving, or maintaining the unlawful wage-and-hour policies, or lack of policies that resulted in the Code and FLSA violations alleged herein.

## CLASS-ACTION ALLEGATIONS

64. Plaintiff brings this action on behalf of himself, and all others similarly situated as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff seeks to represent a Class composed of and defined as follows:

> Save for full-time Staff personnel, all persons (including both exempt and non-exempt and union and non-union employees, as well as those working through Loan-Out companies)[3] paid wages on account of services provided for Defendant RPLA in the production of Motion Pictures or Still

[3] Where applicable claims are only asserted on behalf of non-exempt employees.

Photography in California during the period beginning no earlier than four years prior to the filing hereof to the date of a decision on a Motion for Class Certification (such persons are referred to as "Class Members," and such period is referred to hereafter as the "Class Period").

65. Plaintiff reserves the right to amend or modify this class description with greater specificity or further division into subclasses or limitation to particular issues. This action has been brought and may be properly maintained as a class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure because, with respect to the proposed Class, a class action is a superior method for the fair and efficient adjudication of this controversy. The persons within the Class are so numerous that joinder of all of them is impracticable. The disposition of all claims of the members of the Class in a class action, rather than in individual actions, benefits the parties and the Court. The interest of the Class Members in controlling the prosecution of separate claims against Defendant is small when compared with the efficiency of a class action.

66. Defendants, as to Plaintiff and Class Members, failed to pay all accrued wages. Accordingly, each Plaintiff and Class Member is entitled to payment of his or her unpaid minimum wages, interest, and liquidated damages, as well as reimbursement of their attorneys' fees and reasonable costs.

67. Defendants, as to Plaintiff and Class Members, also failed to accurately provide the data required by section 226(a) of the Code and, accordingly, Defendants' failure to provide such data entitles Plaintiff and each Class Member to either actual damages or statutory liquidated damages, whichever is greater. See, e.g., Naranjo v. Spectrum Security Services, Inc., 15 Cal. 5th 1056, 1068 (2024) ("section 203 and section 226 claims can be brought based on unpaid and unreported missed-break premium pay.")

68. Defendants, as to Plaintiff and Class Members, failed to timely compensate the workers as required by sections 201.3, 201.5, 201.6, 203, 204 and/or 204b of the

Code and, accordingly, Defendants' failure to make timely payment entitles Plaintiff and each Class Member to statutory penalties and/or damages.

69. Defendants, as to Plaintiff and Class Members, failed to provide meal and/or rest breaks as required by sections 226.7, 512 of the Code and Wage Order 12, and, accordingly, Defendants' failure to provide rest breaks entitles Plaintiff and Class Members to actual damages and/or statutory damages.

**A. Numerosity**

70. The potential members of the Class as defined are so numerous that joinder of all the members of the Class is impracticable. While the precise number of Class Members has not been determined at this time, Plaintiff is informed and believes that Defendants employed during the relevant time periods at least 300 workers in the State of California. The number of Class Members is great, but not so great as to make the class unmanageable. It therefore is impractical to join each Class Member as a named plaintiff. Accordingly, utilization of a class action is the most economically feasible means of determining the merits of this litigation.

71. Despite the size of the proposed Class, the Class Members are readily ascertainable through an examination of the records that Defendants and/or their payroll companies are required by law to keep. Likewise, the dollar amount owed to each Class Member is readily ascertainable by an examination of those same records.

**B. Commonality**

72. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members. These common questions of law and fact include several questions of law or fact common to the Class which are capable of class wide resolution, adjudicating issues central to all class members' claims, in one stroke:

a. Whether Defendants failed to pay all wages in a timely fashion upon the discharge of their workers, all in violation of sections 201.3, 201.5, 201.6, 203, 204, and/or 204b of the Code.

b. Whether Defendants' failure to provide accurate itemized Wage Statements to their workers violates section 226(a), as required by the Code as well as Wage Order 12.

c. Whether Defendants failed to provide meal periods and rest breaks to their workers, as required by the Code as well as Wage Order 12.

d. Whether Defendants failed to pay proper minimum wages to their workers under Code sections 1194 and 1194.2, as well as Wage Order 12.

e. Whether Defendants failed to pay proper overtime wages to their workers under Code sections 510, and 1194, as well as Wage Order 12.

**C. Typicality**

73. There is a well-defined community of interest in the questions of law and fact common to the Class Members, as there are questions of law or fact common to the class as members have suffered similar injuries and share central questions that can drive the resolution of the case in one stroke, as established in Wal-Mart v. Dukes.

74. The claims of the named Plaintiff are typical of the claims of the Class, which claims all arise from the same general operative facts, namely, Defendants did not compensate their employees as required by the Code and applicable Wage Order. Plaintiff and all members of the Class sustained injuries and damages arising out of and caused by the Defendants' common course of conduct in violation of laws, regulations that have the force and effect of law, and statutes as alleged herein. Plaintiff has no conflict of interest with the other Class Members and can represent the Class Members' interests fairly and adequately.

**D. Adequacy of Representation**

75. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. The counsel who represent Plaintiff are competent and

experienced in litigation large employment class actions. E.g., Gregory v. SCIE, LLC, 317 F.3d 1050 (9th Cir. 2003); Bithell v. E.P. Mgmt. Servs., 2007 Cal. App. Unpub. LEXIS 9706, *3 (2006)(successful suit against most major motion picture industry participants, including affiliates of RPLA). Neither Plaintiff nor Plaintiff's counsel have any conflict with the Class.

**E. Predominance and Superiority of Class Action—Rule 23(B)(3)**

76. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Many members of the Class have been damaged and are entitled to recovery by reason of Defendants' illegal policy and/or practice of failing to pay timely minimum wages, failing to pay overtime wages, failing to provide Class Members rest and meal periods. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. The Plaintiff is unaware of any difficulties that are likely to be serious impediments to the management of this action that would preclude its maintenance as a class action. The disposition of all claims of the members of the Class in a class action, rather than in individual actions, benefits the parties and the Court. The interest of the Class Members in controlling the prosecution of separate claims against Defendants is small when compared with the efficiency of a class action.

## FLSA COLLECTIVE ACTION ALLEGATIONS

77. In this collective action, Plaintiff seeks to represent all individuals who, at any time during the three years preceding the filing of this Complaint, up to the time of the filing of a motion for certification of a collective action, were or have been employed as a crew member by Defendant RPLA in the United States (the "COLLECTIVE ACTION MEMBERS").

78. Plaintiff is similarly situated with the COLLECTIVE ACTION MEMBERS

in that: (a) Plaintiff and the COLLECTIVE ACTION MEMBERS were employed as crew members by RPLA; (b) Plaintiff and the COLLECTIVE ACTION MEMBERS were not paid timely their overtime and minimum wages for all hours worked; (c) Defendants knowingly and willfully violated provisions of the FLSA by not paying Plaintiff and the COLLECTIVE ACTION MEMBERS their wages; (d) As a result of the practice of Defendants of withholding timely compensation for all hours worked, Plaintiff and the COLLECTIVE ACTION MEMBERS have been similarly damaged in that they have not received timely payment in full of their earned wages.

79. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for liquidated damages, costs and attorneys' fees under the FLSA. Attached hereto as Exhibit 4 is the written FLSA consent form for OLAGUEZ (**Exhibit 2**).

80. All crew members employed by Defendant RPLA in the United States should be given notice and be allowed to give their consent in writing, i.e., "opt in," to the collective action pursuant to 29 U.S.C. § 216(b).

## FIRST CAUSE OF ACTION

(Continuing Wages, Code §§ 201.3, 201.5, 201.6, 203, 204 and/or 204b
On Behalf of Plaintiff and the Class Against All Defendants)

81. Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

82. Defendants employed Plaintiff, yet the Plaintiff was not paid timely all wages accrued upon separation from employment. Plaintiff has yet to be paid premium wages for rest breaks or meal periods.

83. Plaintiff and Class Members consistently worked more than 6-hour and/or 12-hour shifts. However, many were required to keep their walkie talkies, radios and/or cell phones on their persons, turned on and audible at all times, including during their rest periods and meal breaks and/or they were precluded from leaving the set and its immediate environs during their breaks, all due to the requirements of industry practice as detailed above. Accordingly, they were denied their breaks and are entitled to an

additional thirty minutes or more of wages for each faux meal break, earnings which were improperly deducted from their wages and remain unpaid.

84. Defendants' failure to compensate Plaintiff and Class Members within the time for which provision is made by sections 201.3, 201.5, 201.6, 203, 204 and/or 204b of the Code, despite their knowledge of their obligation to do so, was and is "willful" as the word is used in section 203.

85. Pursuant to section 203 of the Code, Plaintiff and Class Members are entitled to continuing wages from Defendants in an amount according to proof, and Plaintiff and Class Members are entitled to such penalties in the amount of at least $100,000. Plaintiff and Class Members are also entitled to recover costs and reasonable attorneys' fees under section 218.5 of the Code.

**SECOND CAUSE OF ACTION**

(Failure to Provide Compliant Pay Stubs, Code § 226(a)
On Behalf of Plaintiff and the Class Against Defendants)

86. The Plaintiff incorporates by reference each and every allegation set forth in this Complaint as though fully set forth herein.

87. Defendants failed to provide Plaintiff and Class Members with Wage Statements conforming to the requirements of section 226(a) of the Code. For a majority of the workers, the Wage Statements failed to report all accrued premium wages owing on account of missed, tardy or truncated rest breaks and failed to report gross or net wages earned.

88. The foregoing was intentional misconduct of Defendants that injured Plaintiff and Class Members insofar as they were deprived of information to which they were legally entitled, including but not limited to all applicable hourly rates in effect during the pay period and, inter alia, due to their illegal rounding practices, the corresponding number of hours worked at each hourly rate by the employee.

89. The failure of Defendants to provide compliant Wage Statements violates section 226(a) of the Code. Accordingly, Plaintiff and Class Members are entitled to damages in an amount according to proof and costs and reasonable attorney's fees in

accordance with the provisions of Code section 226(e), all according to proof, of not less than $1,000. The Plaintiff is entitled to an amount according to proof of at least $50, not including interest thereon, reasonable attorneys' fees and cost of suit.

**THIRD CAUSE OF ACTION**

(Failure to Provide Rest Breaks and Meal Periods, Code § 226.7, 512 and IWC Wage Order 12
On Behalf of Plaintiff and the Class Against Defendants)

90. The Plaintiff incorporates by reference each allegation set forth in this Complaint as though fully set forth herein.

91. At all times relevant, sections 226.7 of the Code and IWC Wage Order 12 provided that employees must receive rest periods of at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof.

92. By their failure to provide required, uninterrupted rest breaks to Plaintiff and Class Members, Defendants willfully violated the provisions of Code sections 226.7, 512 and IWC Wage Order 12.

93. The Plaintiff and Class Members were not permitted to leave the Production set for any purported rest periods or meal breaks. The Plaintiff and Class Members were required to always be available via radio or cell phone.

94. Because Defendants failed to properly provide the proper breaks, it is liable to Plaintiff and Class Members for one hour of additional pay at the regular rate of compensation for each workday that the proper breaks were not provided, pursuant to Code section 226.7, 512 and IWC Wage 12.

95. As a result of the unlawful acts of the Defendants, Plaintiff and Class Members have been deprived of premium wages, and/or other compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, plus interest thereon, fees, and costs.

**FOURTH CAUSE OF ACTION**
(Damages for Unpaid Minimum Wages,
Code §§ 1194, 1194.2 and 1198.
On Behalf of Plaintiff and the Class Against All Defendants)

96. Plaintiff realleges and incorporates herein by reference each and every allegation contained in this Complaint as though fully set forth herein.

97. Plaintiff and the Class Members worked many hours for Defendants, without full and timely compensation for work performed, as required by law. Biggs v. Wilson, 1 F.3d 1537 (9th Cir. 1993).

98. Plaintiff and Class Members are entitled to recover liquidated damages under section 1194.2 of the Code in an amount according to proof in an amount for Plaintiff of at least the product of the applicable minimum wage and the total hours worked, at least thirteen. The Plaintiff and Class Members are entitled to recover costs and reasonable attorneys' fees under section 1194 of the Code.

**FIFTH CAUSE OF ACTION**
(Failure to Reimburse Necessary Expenses, Code §2802
On Behalf of Plaintiff and the Class Against All Defendants)

99. Plaintiff realleges and incorporates herein by reference the allegations contained in this Complaint as though fully set forth herein.

100. In discharge of their duties, Defendants required Plaintiff and Class Members to make purchases, maintain and/or rent equipment for their work on the set of a motion picture. Defendant required the Plaintiff and Class Members to use their personal cellphones and/or computer equipment, but Defendants did not reimburse the workers for such use.

101. Pursuant to section 2802 of the Code, Plaintiff and Class Members are entitled to reimbursement of their out-of-pocket expenses from Defendants and damages in addition to interest thereon, attorney's fees and costs.

102. "The purpose of this statute is to prevent employers from passing their operating expenses on to their employees." Cochran v. Schwan's Home Serv., Inc., 228 Cal.App.4th 1137, 1144 (2014) (internal quotation marks and citation omitted). The

employer's duty to reimburse its workers is triggered if the employer knew or had reason to know the employee has incurred an expense. Stuart v. Radioshack Corp., 641 F. Supp. 2d 901, 904 (N.D. Cal. April 30, 2009). "Once the employer has such knowledge, then it has the duty to exercise due diligence and take any and all reasonable steps to ensure that the employee is paid for the expense." Id.

103. Code section 2802(c) provides, in part, that "the term 'necessary expenditures or losses shall include all reasonable costs, including but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section."

104. Code section 2804 mandates that this statutory right cannot be waived: "Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void, and this article shall not deprive any employee or his personal representative of any right or remedy to which he is entitled under the laws of this State." Code § 2804.

## SIXTH CAUSE OF ACTION

(Unfair Business Practices Business and Professions Code section 17200 *et seq.*
On Behalf of Plaintiff and the Class Against All Defendants)

105. Plaintiff realleges and incorporates herein by reference each and every allegation contained in this Complaint as though fully set forth herein.

106. Business and Professions Code section 17200 *et seq.* prohibits acts of unfair competition, including any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200 *et seq*. Plaintiff alleges that Defendants engaged in unfair business practices in California by the above-described failure to timely pay Class Members their wages due to non-payment of the minimum wage and addition premium wages on account of Defendants' failure to pay premium wages on account of missed rest breaks and meal periods.

107. Defendants' violation of California wage and hour laws as herein articulated constitutes a business practice because Defendants' acts and omissions were done

repeatedly over a significant period, and in a systematic manner, to the detriment of Plaintiff.

108. As a result of Defendants' unfair and unlawful business practices, Defendants have reaped unfair and illegal profits during the relevant time herein at the expense of Plaintiff, many of the Class Members and members of the public. Defendants should be made to disgorge their ill-gotten gains and to restore them to Plaintiff and such Class Members.

109. The actions of Defendants entitle Plaintiff to seek the remedies available under section 17200 *et seq.* Plaintiff seeks full restitution of said amounts from Defendants, as necessary and according to proof, to restore all amounts—including interest—withheld, acquired, or converted by Defendants by means of the unfair practices complained of herein. Plaintiff, on behalf of themself, as well as on behalf of the general public, further seeks attorney fees and costs pursuant to sections 218.5 of the Code and 1021.5 of the Code of Civil Procedure. In addition, as RPLA has a decades-long history of Code violations, the Plaintiff seeks the appointment of a receiver, as necessary.

## **SEVENTH CAUSE OF ACTION**

(Breach of Contract of Employment on behalf of Plaintiffs and Class Members Against All Defendants)

110. Plaintiff repleads, realleges, and incorporates by reference each allegation set forth in the Complaint.

111. In this matter, unlike the case in many other motion picture productions, there was no explicit, written contract of employment between Plaintiff and Class Members on the one hand, and Defendants on the other.

112. "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." Yari v. Producers Guild of Am, Inc., 161 Cal. App. 4th 172, 182 (2008).

113. The elements of a cause of action for breach of contract are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." Coles v. Glaser, 2 Cal. App. 5th 384, 391 (2016).

114. Every implied contract for employment within California incorporates by implication the requirements of the FLSA and the Code.

115. Plaintiff and Class Members diligently worked for Defendants and fulfilled their obligations under their contracts of employment. Defendants breached their implied contracts of employment with Plaintiff and the Class Members when they: (1) failed to provide Notice of the Plaintiffs' and Class Members' right to additional wages on account of the alleged failure to pay premium wages for faux rest breaks and meal periods, much less pay such wages; (2) failed to timely pay for all hours worked, never paying premium wages for faux rest breaks and meal periods, routinely using illegal rounding, deducting exactly thirty or exactly sixty minutes for faux meal periods which should have been compensated for at the minimum wage, at least, and often paying wages more than a week after the promised and legally required "next week" – instead paying many days late, often beyond even the extended times permitted by the Code.

## EIGHTH CAUSE OF ACTION

(Violation of Fair Labor Standards Act Against All Defendants)

116. Plaintiff repleads, realleges, and incorporates by reference each allegation set forth in the Complaint.

117. In this Collective Action, Plaintiff seeks to represent all individuals who, at any time during the three years preceding the filing of this Complaint, up to the time of the ruling on the motion for certification of a collective action, were paid wages by RPLA more than six days after the Saturday close of the RPLA standard payroll week, thereby violating Biggs v. Wilson, 1 F.3d. 1537 (1993).

118. Plaintiff is similarly situated with the COLLECTIVE ACTION

MEMBERS in that: (a) Plaintiff and the COLLECTIVE ACTION MEMBERS were employed by RPLA; (b) Plaintiff and the COLLECTIVE ACTION MEMBERS were not paid their overtime and minimum wages for all hours worked; (c) Defendants knowingly and willfully violated provisions of the FLSA by not paying Plaintiff and COLLECTIVE ACTION MEMBERS their overtime and minimum wages for all hours worked; and (d) as a result of the Defendants practice of withholding compensation for all hours worked, Plaintiff and COLLECTIVE ACTION MEMBERS have been similarly damaged in that they have not received timely paying in full of their earned wages.

119. This action is maintainable as an “opt-in” collective action pursuant to 29 U.S.C. §216(b) as to claims for liquidated damages, costs and attorneys’ fees under the FLSA. Attached hereto as Exhibit 2 is Plaintiff’s written FLSA consent form.

120. All RPLA employees in the United States should be given Notice and allowed to give their consent in writing, i.e., “opt in,” to the collective action pursuant to 29 U.S.C. §216(b).

**WHEREFORE**, Plaintiff prays judgment as follows:

1. That the Court certify a Class Action or Actions as well as a Collective Action.

2. That, under the First Cause of Action, it be adjudged that the failure of Defendants to make timely, full payment of Plaintiff’s and Class Members’ wages was in violation of sections 201.5, 203, 204 and/or 204b of the Code, and was “willful” as that word is used in section 203 of the Code, and the Court should enter judgment against Defendants in favor of Plaintiff and Class Members, in favor of Plaintiff and the Class, in the amount of not less than $100,000, and costs and reasonable attorneys’ fees in accordance with the provisions of Code section 218.5.

3. That, under the Second Cause of Action, Code § 226(a), Failure to Provide Compliant Wage Statements, and Wage Order 12, this Court should enter judgment in favor of Plaintiff, in an amount of at least $50, not including interest thereon, reasonable attorneys’ fees and cost of suit, and enter judgment in favor of the Class Members against

Defendants in the amount of damages, interest, and costs, according to proof, and costs and reasonable attorneys' fees in accordance with the provisions of Code section 226(e).

4. That, under the Third Cause of Action, Code §§ 226.7, 512 and Wage Order 12, Failure to Provide Rest Breaks and Meal Periods, this Court should enter judgment in favor of Plaintiff and the Class Members and award them their damages, penalties, and costs of suit, all according to proof, pursuant to section 218.5 and other relevant sections of the Code.

5. That, under the Fourth Cause of Action, Code § 510, 1194, 1194.2 and Wage Order 12, Failure to Provide Pay Proper Minimum Wages, this Court should enter judgment in favor of Plaintiff and Class Members in the amount of unpaid Minimum Wages against Defendants in the amount of damages according to proof, interest thereon, reasonable attorneys' fees and cost of suit.

6. That, under the Fifth Cause of Action, Code § 2802 and Wage Order 12, Failure to Reimburse Business Expenses, this Court enter judgment in favor of Plaintiff and Class Members against all Defendants in an amount according to proof, interest thereon, costs and reasonable attorney's fees in accordance with Code section 2802(c).

7. That, under the Sixth Cause of Action, Bus. & Prof. Code §17200 et seq.--Restitution, this Court enter judgment in favor of Plaintiff and Class Members and it be adjudged that Defendants' violations of the applicable Wage Order and above cited sections of the Code and violated section 17200 *et seq*. of the California Business and Professions Code award them restitution, reasonable attorney's fees and costs of suit, all according to proof, pursuant to law.

8. That, with respect to the Seventh Cause of Action, Breach of Implied Employment Contract, this Court should enter judgment in favor of Plaintiff and Class Members against all Defendants in an amount according to proof, interest thereon, costs and such other reasonable relief as may be appropriate in the circumstance.

9. That, with respect to the Eighth Cause of Action, Code, violation of the FLSA, this Court should enter judgment in favor of Plaintiff and Collective Action

Members and they should be awarded their unpaid overtime and/or minimum wages, liquidated damages, and attorneys' fees and costs, pursuant to 29 U.S.C. §216(c), against Defendants in an amount according to proof, at least $474.69, interest thereon, costs and such other reasonable relief as may be appropriate in the circumstance.

10. For such further relief as the Court may order, including attorney's fees, costs, and interest pursuant to Code sections 218.5 and 218.6, and Code of Civil Procedure section 1021.5, in an amount according to proof.

DATED: March 27, 2026

Respectfully submitted,

HARRIS & RUBLE

Alan Harris

Alan Harris
*Attorney for Plaintiff*

**INDEX TO EXHIBITS**

| | |
|---|---|
| Exhibit 1 | A partially redacted RPLA Wage Statement dated 4/11/25 |
| Exhibit 2 | Plaintiff's FLSA Consent Form |